64    APPELLATE COURTS OF ILLINOIS.

Wholesale Groc. Corp. v. Richheimer Brok. Co., 233 Ill. App. 64.

## Wholesale Grocers Corporation, Appellant, v. Richheimer Brokerage Company, Appellee.

### Gen. No. 28,313.

1. CONVERSION—*nature of action of trover.* An action of trover is a species of action on the case.

2. ATTACHMENT—*will lie in aid of action of trover.* Under ¶ 31 of chapter 11, Cahill's Statutes, providing for the suing out of a writ of attachment in aid of any action of trespass on the case, an attachment in aid will lie in an action of trover.

3. VALUES—*when price is evidence of value.* In an action of trover where it appeared that defendant sold salmon to plaintiff which, being unsatisfactory, defendant agreed to take back and return the purchase price, but defendant, after obtaining the salmon stopped payment on the check given for it, the action of the court, in finding in favor of defendant on the ground that the price paid for the salmon was no evidence of its value, was error.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JOHN K. PRINDIVILLE, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Reversed and remanded. Opinion filed April 30, 1924.

M. L. CARMODY, for appellant.

No appearance for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action of replevin against the defendant seeking to recover 268 cases of salmon of the value of $2,144. None of the goods being taken on the writ, the action was changed to trover. Afterwards, plaintiff sued out an attachment in aid and the City State Bank of Chicago was served as garnishee. It filed its answer to interrogatories admitting an indebtedness to the defendant of $77.22.

At the beginning of the trial, which was had before the court without a jury, counsel for the defendant moved that the attachment be quashed on the ground

that an attachment in aid would not lie in an action of trover. The court sustained the motion and the attachment was quashed. The case then proceeded. At the close of the plaintiff's evidence, the court found the issues for the defendant and the plaintiff prosecutes this appeal.

1. The first question to be determined is whether the action of the court in quashing the attachment in aid was wrong. No brief has been filed by the defendant, but it appears from the record that the court based its action on the authority of the case, *Meyer v. Meyer*, 215 Ill. App. 203, where it was held that an attachment in aid of an action of trover would not lie because there was no statutory authority for it. In that case the court said (p. 206):

"An attachment proceeding was unknown at the common law. It is purely statutory and in derogation of the common law. It is clearly established by the decisions of this State that the authority for the issuance of an attachment writ must be found in the statute and the statute must be strictly followed. Trover is not mentioned in the statute among those actions in aid of which attachment may be issued. It is however insisted by counsel for appellee that trover is technically a form of trespass on the case, but to this we cannot agree. The actions of trover and trespass and trespass on the case are clearly distinguishable. Corpus Juris, Vol. 1, par. 117, page 997, and par. 123, page 998. There being no statutory authority for an attachment in aid of an action of trover, it will not lie."

After a consideration of the authorities found in plaintiff's brief, as well as an independent examination, we are inclined to disagree with the rule announced in the *Meyers* case. We think an action of trover is a species of action on the case. Vol. 2, Cooley's Blackstone, page 151; 1 Chitty, Pl. (14th Am. Ed.) p. 146; Rapalje and Lawrence's Law Dictionary; Anderson's Dictionary of Law; Black's Law Diction-

ary; 1 Shinn's Pleading and Practice, p. 158, sec. 136; Puterbaugh's Pleading & Practice (New 9th Ed.).

In Cooley's Blackstone, it is said: "This action of *trover* and *conversion* was in its original an action of trespass upon the case, for recovery of damages against such person as has *found* another's goods, and refused to deliver them on demand, but *converted* them to his own use; from which finding and converting it is called an action of *trover* and *conversion*. The freedom of this action from wager of law, and the less degree of certainty requisite in describing the goods, gave it so considerable an advantage over the action of *detinue*, that by a fiction of law actions of *trover* were at length permitted to be brought against any man who had in his possession, by any means whatsoever, the personal goods of another."

Chitty in his great classic on pleading at the page cited (p. 146) says: "The action of trover or conversion was, in its origin, an action of trespass on the case for the recovery of damages against a person who had found goods and refused to deliver them on demand to the owner, but converted them to his own use, from which word, 'finding,' the remedy is called an action of trover."

Rapalje and Lawrence in their law dictionary in defining trover say: "In common law practice, the action of trover (or trover and conversion) is a species of action on the case."

In Anderson's Dictionary of Law, trover is defined as follows: "Originally, an action of trespass on the case for the recovery of damages against such person as had 'found' another's goods and refused to deliver them on demand." A further definition from that authority is "Trover is an action on the case. It may be joined with case, or new counts in case added to it by way of amendment."

The definition in Black's Law Dictionary is "In common law practice, the action of trover (or trover and conversion) is a species of action on the case."

Shinn in his work on Pleading and Practice in section 136 says: "By the early law there was one particular form of declaration of trespass on the case for the recovery of damages against a person who had 'found' another's goods and refused to deliver them on demand and who had 'converted' them to his own use. From this action of trespass on the case for 'conversion,' a special form of action has been developed, taking its name from the finding, trover."

In Puterbaugh on Pleading and Practice (new 9th Ed.) page 364, the author gives a form of declaration in trover in which the action is referred to as one of trespass on the case.

Section 31 of chapter 11, Cahill's Statutes, provides for the suing out of a writ of attachment in aid of "any action of *assumpsit,* debt, covenant, trespass, or trespass on the case," which we think is broad enough and does include the action of trover because, under the authorities above cited, trover is but a part of or species of the action of trespass on the case. And there can be no reason why the legislature should permit the suing out of an attachment in aid of an action which is commonly designated as case, and refuse such attachment in aid in a trover suit. Of course, there is a distinction between an action of trover and what is commonly designated as an action on the case, as stated in Corpus Juris, page 997, and which is referred to in the *Meyer* case, but that is an inaccurate statement because as we have seen the action of trover is one of the actions included within the designation of actions of trespass on the case. We, therefore, hold that the court was in error in quashing the attachment.

2. The evidence offered by plaintiff on the trial tended to show that it had purchased the salmon in controversy from the defendant and paid for it; that upon receiving it, complaint was made by the plaintiff that the salmon was not what it should be. As a result of the controversy, the plaintiff started two suits

68    APPELLATE COURTS OF ILLINOIS.

Wholesale Groc. Corp. v. Richheimer Brok. Co., 233 Ill. App. 64.

against the defendant. Afterwards, the defendant's representative called on the plaintiff and it was agreed that the salmon should be taken back by the defendant and the $2,144 which plaintiff had paid for the salmon should be given to the plaintiff and the pending suits disposed of. And it was after this agreement the defendant's representative called for the salmon and gave a check to the plaintiff for $2,144. The salmon was taken away by the defendant. But when plaintiff presented the check to the bank, payment was refused on the ground that the defendant had so ordered. At the close of plaintiff's evidence, defendant moved that there be a finding in its favor, because as stated by its counsel, the price paid for the salmon was no evidence of its value, and that being true, plaintiff could not recover. Defendant's contention was sustained by the court, and in this we think there was error. *Johnson v. Canfield-Swigart Co.,* 292 Ill. 101; *Sears, Roebuck & Co. v. Mears Slayton Lumber Co.,* 226 Ill. App. 287; *Cloyes v. Plaatje,* 231 Ill. App. 183.

In the *Johnson* case, the Supreme Court said (pp. 111-112): "The price actually paid at a *bona fide* sale of property, the value of which is in issue, is admissible to prove the value of such property. (13 Ency. of Evidence, 447, 528, 539.) Such proof is sufficient evidence of its value in the absence of other testimony."

In the *Sears, Roebuck & Co.* case, we gave consideration to this question and held that where personal property is sold, and nothing appearing to cast suspicion on the transaction, the price paid is evidence of value; and referred to a number of authorities in support of this holding. And again in the *Cloyes* case, where the same question in effect was involved, we again re-examined the question and came to the same conclusion, and there cited additional authorities in support of our position.

Upon an examination of the record, we find that

on the trial counsel for the defendant relied chiefly upon the case of *Robinson v. Alexander*, 141 Ill. App. 192. In that case, a person who had owned household furniture, brought suit against a party conducting a storage house for failure to deliver his furniture. The evidence showed that plaintiff bought the furniture new, used it and then put it in the storage house and some years later, he having failed to pay the storage charges, defendant sold the property. The only evidence of plaintiff's damages was what he had paid for the furniture several years before. Of course, this was no evidence of what the furniture was worth. The court there refers to the case of *Brewster v. VanLiew*, 119 Ill. 554, as authority. An examination of the facts in that case clearly showed that it is no authority for the contention made by defendant on the trial. The court should have denied the defendant's motion for the errors indicated.

The judgment of the Municipal Court of Chicago is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

TAYLOR, P. J. and THOMSON, J. concur.